IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 12- 01076 (ESL)

NATIONAL PROMOTERS AND                    CHAPTER 11
SERVICES, INC.

        Debtor

## OPINION AND ORDER

This case is before the court upon the Debtor's *Motion to Set Aside Order Prohibiting the Use of Cash Collateral and to Show Cause* (the "*Motion for Reconsideration*", Docket No. 186). The main controversy hinges on whether creditor LSREF2 Island Holdings Ltd. ("Island Holdings") has a valid lien over the Debtor's rent proceeds. For the reasons stated below, the court determines that a valid lien was properly constituted over the Debtor's rent proceeds in favor of Island Holdings. Consequently, the Debtor's *Motion for Reconsideration* is hereby denied.

## Procedural Background

The Debtor filed a voluntary Chapter 11 bankruptcy petition on May 15, 2012 (Docket No. 1).

On June 6, 2012, FirstBank filed a *Proof of Claim* (Claims Register No. 7-1) and a *Motion Submitting Documents in Support of Claim No. 7* (Docket No. 40). On April 19, 2013, Island Holdings filed a *Transfer of Claim* (Docket No. 136) informing that FirstBank had transferred to it Claim No. 7-1.

On June 5, 2013, Island Holdings filed an *Urgent Request for Entry of Order Prohibiting the Use of Island Holdings' Cash Collateral and for Adequate Protection* ("*Motion to Prohibit the Use of Cash Collateral*", Docket No. 180) alleging that prior to the filing of the bankruptcy petition, FirstBank had entered into various loan and security agreements with the Debtor and others, whereby FirstBank extended certain promissory notes, guarantees, pledge agreements, security agreements, mortgage notes agreements, deeds of mortgages and

-1-

assignment of leases and rents, among others. Island Holdings sustains that pursuant to the *Assignment of Leases and Rents* agreement, it has a first priority interest in the cash collateral pursuant to 11 U.S.C. §§ 363(a) and 552(b)(2). It argues that the *Assignment of Leases and Rents* was duly authenticated by Notary Public José J. Ledesma on December 28, 2001, Affidavit No. 1451, and consequently the perfection of a continuing lien on its proceeds complies with the Civil Code of Puerto Rico and case law. Island Holdings also contends that it has not consented and does not consent to the Debtor's use of its cash collateral and that the Debtor has not provided adequate protection for such use. The *Assignment of Leases and Rents* was filed with a *Motion Submitting Document* on June 6, 2012 (Docket No. 181).

On June 6, 2013, the court entered an *Order Prohibiting the Use of Cash Collateral and to Show Cause* (the "*Order Prohibiting the Use of Cash Collateral*", Docket No. 182) ruling that the Debtor, its employees, contractors and agents were prohibited from using any cash collateral of Island Holdings. The court also ordered the Debtor to show cause in writing on or before June 13, 2013 why a further order should not be entered: (a) ordering the Debtor to forward all proceeds from the rental contracts to Island Holdings immediately; (b) requiring that any cash collateral of Island Holdings that is in the possession, custody or control of the Debtor or any of the Insiders of the debtor (as such term is defined in 11 U.S.C. § 101) be turned over to Island Holdings, whether now existing or hereafter created; (c) requiring an accounting of all cash collateral received by or for the benefit of the Debtor since the petition date; (d) permitting Island Holdings immediate access to the books and records of the Debtor, including all electronic records on any company computers, to make electronic copies, photocopies or abstracts of the business records of the Debtor. A hearing was scheduled for June 18, 2013. The *Order* was entered without prejudice to the Debtor moving the court for the use of case collateral pursuant to 11 U.S.C. §363, Fed. R. Bankr. P. 4001-(2) and LBR 4001-2.

On June 12, 2013, the Debtor filed the *Motion for Reconsideration* (Docket No. 186) alleging that the *Order Prohibiting the Use of Cash Collateral* was entered without allowing the Debtor the opportunity to respond to the *Motion to Prohibit the Use of Cash Collateral* and that

-2-

Island Holdings does not have a validly perfected security over the rent proceeds because it failed to show that it filed a financing statement under Puerto Rico's Secured Commercial Transactions Act of 1995, as amended, 19 L.P.R.A. §§ 2101 *et seq.* ("Puerto Rico's Secured Commercial Transactions Act").  The Debtor argues that Island Holdings does not have any cash collateral rights or any right to receive adequate protection on the rent proceeds. Alternatively, the Debtor argues that in the specific case of rents, adequate protection does not need to be provided if the rents are being renewed on a monthly basis and are not declining in value, and that in the instant case, rents have not decreased, but rather increased, as new leases have been obtained for its premises.  That same day, on June 12, 2013, the court entered an *Order and Notice* (Docket No. 187) ruling that the Debtor's *Motion for Reconsideration* would be considered at the June 18, 2013 hearing.

On June 17, 2013, Island Holdings filed a *Reply to Debtor's Motion for Reconsideration and to Set Aside [the Order Prohibiting the Use of Cash Collateral] and Memorandum of Law in Support* (Docket No. 192) contending that Puerto Rico's Secured Commercial Transactions Act adopted 9 of the 13 articles of the Model Uniform Commercial Code ("UCC"), and that notwithstanding such adoption, Puerto Rico excluded the applicability of the UCC to the creation or transfer of an interest in or lien or real estate, including a lease or rents thereunder pursuant to 19 L.P.R.A. § 2004.  Consequently, Island Holdings sustains that the attachment and lien on real estate properties are governed by state law, in particular, Article 1416 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3941, as interpreted by the Supreme Court of Puerto Rico in IBEC Housing v. Banco Comercial, 117 P.R. Off. Trans. 446, 117 D.P.R. 371 (1986), and Building Maintenance v. Hato Rey Executive, *infra*, ruling that in order for an assignment to be effective against third parties, even if the tenant is not notified, the document must include a fixed date and that an affidavit before a notary public suffices to satisfy that requirement.  Island Holdings concludes that pursuant to Article 1416 of the Civil Code of Puerto Rico, *supra*, it has a properly perfected pre-petition security interest in the Debtor's rent proceeds pursuant to the *Assignment of Leases and Rents.*

On June 18, 2013, the court held a hearing to consider the Debtor's use of cash collateral, if any[1], and its *Motion for Reconsideration*. The court determined that the contested matter involved a two-step process: (a) determining if Island Holdings has a lien over cash collateral; and (b) if so, what adequate protection would be provided, if any. The Debtor was granted 7 days to file uncontested facts, Island Holdings was granted 14 days thereafter to file its adopted legal argument and the Debtor was granted 14 days to reply. See Docket No. 202.

On June 19, 2013, the Debtor filed a *Motion in Compliance with Order* (Docket No. 198) submitting its statement of uncontested facts. On July 3, 2013, Island Holdings filed its *Motion in Compliance with Order* (Docket No. 204) where, in addition to restating the arguments and legal grounds it had already discussed in its prior *Motion to Prohibit the Use of Cash Collateral*, it proffers that *Deed No. 42 of Mortgage* executed by the Debtor and FirstBank on December 28, 2001 before Notary Public José J. Ledesma (the "*Deed of First Mortgage*") also provides for the for the assignment of rents in favor of the lender upon the occurrence of an event of default security (Docket No. 40-12, p. 17), and that said mortgage deed is duly recorded at Puerto Rico's Property Registry. Additionally, Island Holdings also sustains that the *Assignment of Rents and Leases* falls within the scope of Section 552(b) of the Bankruptcy Code.

On July 17, 2013, the Debtor filed a *Reply to Island Holdings' Objection to Statement of Uncontested Facts and Response to Case Law Cited in Open Court* (Docket No. 211) contesting the allegation that the assignment of rents was duly perfected through the recordation of the *Deed of First Mortgage* and citing Simonds v. Registrador de Humacao, 22 P.R.R. 567, 22 D.P.R. 608 (1915), for the proposition that an assignment of rent was a purely personal contract, not an interest in real estate under Puerto Rico's Mortgage Law[2]. The Debtor also cites Cintrón v. Registrador de Caguas, 29 P.R.R. 392, 29 D.P.R. 420 (1921), for the proposition that a deed

---

[1] See Docket No. 187. As of the date of that hearing, there was no pending motion by the Debtor for the use of cash collateral.

[2] The Simonds case cites and applies the doctrine established in Banco Territorial y Agrícola v. The Registrar of Caguas, 19 P.R.R. 983, 19 D.P.R. 1037 (1913), which is the lead case for the Debtor's proposition.

for assignment of rents cannot be recorded in the Property Registry because it constitutes an assignment of a personal property interest. Thus, the Debtor reaffirms that an assignment of rents can only be secured in Puerto Rico through the Secured Commercial Transactions Act, *supra*, and that such compliance did not happen in the instant case. In regards to Island Holdings' argument that the assignment of rents falls under 11 U.S.C. § 552(b), the Debtor sustains that said section has certain exceptions, one of which is Section 544, which provides for the avoidance of an unperfected security.

On July 24, 2013, Island Holdings filed a *Motion to Strike Debtor's Reply to Island Holdings' Objection to Proffers Made at Cash Collateral Hearing, Docket No. 211 and Request for Entry of Order* (Docket No. 217) claiming that Debtor cited various cases in Spanish, which is prohibited by Local Rules and case law and thus requests the court to strike the Debtor's *Reply* at Docket No. 211. On July 29, 2013, the Debtor filed a *Response to Motion to Strike Debtor's Reply and Request for Order* (Docket No. 219) alleging that in order to avoid additional and unnecessary litigation, it requested certified translations of the two opinions cited in its *Reply* and would proceed to file them with the court. It did so on August 9, 2013 through a *Motion Submitting Certified Translation* (Docket No. 229).

On August 7, 2013, the court held a hearing to consider several contested matters. Prior to the evidentiary hearing, and in response to questions by the court, Island Holdings clarified that its claim on the assignment of rents was only as a lien on their proceeds, not ownership. See Docket Nos. 226 (Audio File) and 235 (*Minute Entry*).

No further replies or briefs were filed in regards to the assignment of rents.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(K) and (M).

Applicable Law and Analysis

*(A)     Does Island Holdings have a Valid Lien over the Debtor's Rent Proceeds?*

In the instant case, Island Holdings claims no ownership in the rent proceeds, only a lien over them as additional security. Neither is Island Holdings claiming an absolute or unconditional assignment[3]. Island Holdings argues that its perfected lien over the Debtor's rent proceeds stems from two separate sources: (a) the *Assignment of Leases and Rents* executed by the Debtor and FirstBank on December 28, 2001, which was acknowledged and subscribed before Notary Public José J. Ledesma, Affidavit No. 1451 (Docket No. 181, pp. 3-18); and (b) the *Deed First Mortgage* executed by the Debtor and FirstBank on December 28, 2001 before Notary Public José J. Ledesma (Docket No. 40-12).

The *Assignment of Leases and Rents* executed by the Debtor and FirstBank on December 28, 2001 states in § 2 that the Debtor "assigned to [FisrstBank] a **continuing lien** in, all of the [Debtor]'s right, title and interest in and to all lease agreements" and that the agreement of assignment "secures the payment of all obligations of the [Debtor] … under the existing Loan Agreement, the Notes and any and all other Loan Documents whether for principal, interest, fees, expenses or otherwise, and all obligations of the [Debtor] under [the] agreement…" (Docket No. 181, pp. 4-5, emphasis added). Likewise, subdivision (b) of the 6th section of the *Deed of First Mortgage* states that the mortgage extends to "all due and unpaid rents, whatever the cause of their not having been collected, and those payable until th[e] mortgagee shall have recovered payment of th[e] mortgage credit in full" (Docket No. 40-12, p. 8). Similarly, subsection 14(ii) of the *Deed of First Mortgage* states that "upon the occurrence and continuance of an event of default ... [the] Mortgagee, its successors and assigns, may, at its

---

[3] A rent assignment may be a source of additional security for a mortgage loan, or, alternatively, it may create an absolute and unconditional assignment. See, *e.g.*, Fin. Ctr. Assocs. of E. Meadow, L.P. v. TNE Funding Corp. (In re Fin. Ctr. Assocs. of E. Meadow, L.P.), 140 B.R. 829, 832 (Bankr. E.D.N.Y. 1992) (noting that "[t]he case law distinguishes between these two different types of assignment"). When an assignment is for additional security, the lender has a lien on the rents, but title to the rents remains with the borrower. When an assignment is absolute and unconditional, title to the rents vests in the lender upon execution of the agreement, and the borrower is granted a revocable license to collect the rents that may terminate immediately and permanently upon default. See, *e.g.*, First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.), 59 F.3d 423, 427-429 (3rd Cir. 1995) (discussing New Jersey law).

-6-

election … enter upon and take possession of the mortgaged property … and may hold, operate, manage, the same and receive all earnings, income, rents, issues and proceeds accruing with respect thereto or any part thereof" (Docket No. 40-12, pp. 16-17).

The Debtor disputes Island Holdings' lien on several grounds. It argues that Island Holdings does not hold a pre-petition perfected security interest over the leases and the rent proceeds because it did not file a financial statement pursuant to Puerto Rico's Secured Commercial Transactions Act. The Debtor further contends that 19 L.P.R.A. § 2102 establishes that the provisions therein apply to all transactions, regardless of their form, which is intended to create a security interest in personal property, including those created by pledge, assignment, chattel mortgage, factor's lien, conditional sale, trust receipt or other lien or title retention contract and lease or consignment intended as a security; and that the Civil Code of Puerto Rico's general provisions regarding pledges and the transmissions of credits ("assignments") do not apply to the transactions governed by Puerto Rico's Secured Commercial Transactions Act. The Debtor also disputes the applicability of the Civil Code of Puerto Rico and the doctrine established in Building Maintenance v. Hato Rey Executive, 9 P.R. Off. Trans. 379, 109 D.P.R. 656 (1980), to the *Assignment of Leases and Rents* because that case was decided before the enactment of Puerto Rico's Secured Commercial Transactions Act in 1995, and thus renders its doctrine inapposite. In regards to the assignment of rents provided in the *Deed of First Mortgage*, the Debtor contends that Puerto Rico's early 20th century case law provides that Puerto Rico's Property Registry cannot record such assignments because they constitute a personal interest, not an *in rem* interest pursuant to Simonds v. Registrador de Humacao, *supra*, and Cintrón v. Registrador de Caguas, *supra*[4].

---

[4] See footnote no. 2 regarding Banco Territorial y Agrícola v. The Registrar of Caguas, *supra*. The court is not persuaded by the early 20th century cases cited by the Debtor under Puerto Rico's previous Mortgage Law of 1893, which was expressly repealed through Article 254 of Act No. 198 of August 8, 1979, the current Mortgage Law, 30 L.P.R.A. § 2802. The court particularly refers to the cases of Simonds v. Registrador de Humacao, *supra*, and Cintrón v. Registrador de Caguas, *supra*, which were ruled by the Supreme Court of Puerto Rico on 1915 and 1921, respectively. Both cases cite and apply Banco Territorial y Agrícola v. The Registrar of Caguas, *supra*, which was ruled on 1913. These cases were cited for the proposition that assignment of rents may not be recorded by the Property Registrar because the right to recover rents is a purely personal obligation that is not a real contract or a real right.

Island Holdings, on the other hand, contends that Puerto Rico expressly excluded the applicability of the UCC to the creation or transfer of an interest or lien on real estate, including a lease or rents thereunder, pursuant to Article 9-104(j) of Puerto Rico's Secured Commercial Transactions Act, 19 L.P.R.A. § 2004(j), which therefore makes the Civil Code of Puerto Rico and its relevant case law applicable to assignment of rents. Consequently, Island Holdings avers that Article 1416 of the Civil Code of Puerto Rico governs and that, pursuant to IBEC Housing v. Banco Comercial, *supra*, and Building Maintenance v. Hato Rey Executive, *supra*, the only requirement for an assignment of leases in Puerto Rico to be effective against third parties is that the document contains a fixed date ("date certaine") and that in the instant case, the *Assignment of Leases and Rents* was authenticated by a notary public, which complies with that doctrine.

The court will examine the *Assignment of Leases and Rents* under the scope of the applicable state law for property interests are created and defined by state law. Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007), quoting Butner v. United States, 440 U.S. 48, 55 (1979). Also see In re South Side House LLC,, 474 B.R. 391, 401-402 (Bankr. E.D.N.Y. 2012) ("[t]o determine whether the rents are property of the estate and the Lender's cash collateral, the court must start with [state] law, which defines the property interests of borrowers and lenders under assignments of rent, and then consider whether the Debtor's pre-petition property interests in the Rents meets the definition of property of the estate under Section 541(a).")

*(1)    The Bankruptcy Estate and Rents in Puerto Rico*

When a debtor files for bankruptcy, "all [of his/her/its] legal and equitable interests ... in property as of the commencement of the case" become part of the bankruptcy estate. 11 U.S.C. § 541(a). The bankruptcy estate is created automatically by operation of law immediately after the bankruptcy petition is filed. See 11 U.S.C. § 541(b); Hon. Nancy C. Dreher, Hon. Joan N. Feeny and Michael J. Stepan, Esq., Bankruptcy Law Manual, Volume 1, §§ 5:1-5:2 (2012-2) pp. 944-946. "It is from this central core of estate property that the debtor's creditors will be

-8-

paid". Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2013). Also see Wiscovitch-Rentas v. González-Claudio, 484 B.R. 1, 11 (Bankr. D.P.R. 2012). Section 541(a)(6) establishes that post-petition "proceeds, product, offspring, rents, or profits of or from property of the estate" are also property of the bankruptcy estate. 11 U.S.C. § 541(a)(6).

Article 260 of the Civil Code of Puerto Rico distinguishes properties between movables and immovables. 31 L.P.R.A. § 1029. "Immovables are, in general, those which cannot move themselves or be removed from one place to another." Article 261 of the Civil Code, 31 L.P.R.A. § 1041. "Things may be immovable either by their own nature or by their destination or the object to which they are applicable." Article 262 of the Civil Code, 31 L.P.R.A. § 1042. Immovable properties include "[l]ands, buildings, roads and structures of every kind adherent to the soil." Article 263(a) of the Civil Code, 31 L.P.R.A. § 1043(a). Incorporeal objects can also be considered immovable from the object to which they apply. See Article 264 of the Civil Code, 31 L.P.R.A. § 1044. Rights and obligations established on an immovable object are also considered immovable. Article 264(b) of the Civil Code, 31 L.P.R.A. § 1044(b).

Rents are defined as the proceeds from a lease agreement. See e.g. Vélez v. San Miguel, 68 P.R.R. 535, 549, 68 D.P.R. 575, 591 (1948) (Dissenting Opinion by Justice Todd); Black's Law Dictionary, 9th ed., West, 2009, p. 1141 (defining "rent" as the payment "for the use of another's property"). Rents are typically considered movable properties except when they constitute a lien on a real property or mortgage loans. Article 269 of the Civil Code, 31 L.P.R.A. § 1065. Similarly, "[t]he ownership of property, whether movable or immovable, carries with it the right, by accession, to everything which is produced thereby, or which is united thereto or incorporated therewith, either naturally or artificially." Article 287 of the Civil Code, 31 L.P.R.A. § 1131. Ownership of a property also entitles ownership over its "civil fruits". Article 288(3) of the Civil Code, 31 L.P.R.A. § 1141(3). "Civil fruits are the rents of buildings, the price paid for the lease of lands, and the amount of perpetual, life or other similar incomes." Article 289 of the Civil Code, 31 L.P.R.A. § 1142.

Therefore, it is undisputed that the rents and their post-petition proceeds in the instant case are part of the bankruptcy estate under 11 U.S.C. § 541(a)(6).

*(2) The Assignment of Leases and Rents*

The Model Uniform Commercial Code ("UCC") was created in 1952 and consists of uniform rules coordinating the sale of goods and other commercial transactions throughout the 50 United States. It was created by the National Conference of Commissioners on Uniform State Laws and the American Law Institute. It is not an enforceable law unless it is expressly adopted through state legislation. See Jesús M. Alvarado Rivera, Fuentes del Derecho Mercantil y su Trato por los Tribunales, Estudio Comparado de España, Estados Unidos y Puerto Rico, 78 Rev. Jur. U.P.R. 825, 834 (2009); Cossec v. González López, 179 D.P.R. 793, 800 (2010). Its goal is to simplify commercial transactions and to make commercial paper transactions less complex and uniform. See § 1-102(2)(c) of the UCC (Purposes; Rules of Construction; Variation by Agreement); Ziraat Bankasi v. Standard Chartered Bank, 84 N.Y.2d 480, 487 (1994) ("Uniformity of the law among the various jurisdictions is of course among the objectives of the Uniform Commercial Code"); In re Flagstaff Foodservice Corp., 16 B.R. 132, 134 fn. 7 (Bankr. S.D.N.Y 1981) ("It should be noted that a fundamental purpose of the UCC was to make uniform the laws among the various jurisdictions."); Walter D. Malcolm, The Uniform Commercial Code in the United States, 12 Int'l & Comp. L.Q. 226 (1963); and Jae Yeol Kwon, Is the UCC Dead, Or Alive and Well?, 29 Loy. L.A. L. Rev. 1095, 1101 fn. 38 (1996).

"The UCC, which has been adopted in the fifty states of the United States, does not apply generally in Puerto Rico." Empresas Berrios v. Esteves-Ortiz (In re Esteves-Ortiz), 295 B.R. 158, 160 (B.A.P. 1st Cir. 2003), citing Ennio M. Colón García *et al*., Puerto Rico: A Mixed Legal System - Mercantile Law, 32 Rev. Jur. U.I.P.R. 274 (1998) and Acevedo v. Citibank, 15 P.R. Offic. Trans. 1012, 115 D.P.R. 768, 769 (1984). Rather, due to the presence of large financial institutions from the continental United States doing business in the island, Puerto Rico enacted Act No. 208 on August 17, 1995, also known as the "Commercial Transactions

Act", to adopt portions of Sections 1, 3, 4 and 4A of the Model UCC. See the Exposition of Motives of Puerto Rico's Act No. 208 of August 13, 1995. About a year later, on September 19, 1996, Puerto Rico's Commercial Transactions Act was amended through Act No. 241 (the Secured Commercial Transactions Act) to further adopt, *inter alia*, several sections of Article 9 of the UCC[5]. See the Exposition of Motives of Puerto Rico's Act No. 241 of September 19, 1995.

Like its UCC counterparts, "[t]he purpose of [Puerto Rico's] Commercial Transactions Act is to expedite and facilitate the banking transactions in Puerto Rico and the United States by creating uniformity and consistency in the financing of chattel mortgages and other negotiable instruments." In re Estevez-Ortiz, 297 B.R. 356, 358 (Bankr. D.P.R. 2002), aff'd 295 B.R. 158 (B.A.P. 1st Cir. 2003), citing the Legislative History of Puerto Rico's Act No. 241 of September 19, 1996. Also see the Exposition of Motives of Puerto Rico's Act No. 208 of August 13, 1995.

The adoption of the several sections of the UCC did not negate Puerto Rico's civil law influence:

> Retaining civil law influence has been due partly to the hierarchical order … which laws in Puerto Rico have. At the top level are the special mercantile laws. The next level that follows special mercantile laws is the Code of Commerce which is a general law. The Code of Commerce is applicablewhen there is no conflict of laws and when the controversy is not included in the special laws. In the absence of an applicable law, then the uses of commerce are observed. 32 Rev. Jur. U.I.P.R. at 277, as cited in In re Estevez-Ortiz, 295 B.R. at 161.

Therefore, when a controversy falls outside the scope of Puerto Rico's Commercial Transactions Act, as expanded by Puerto Rico's Secured Commercial Transactions Act, courts must initially resort to Puerto Rico's Code of Commerce, 10 L.P.R.A. §§ 1001 *et seq.*, and in last instance to the Civil Code, 31 L.P.R.A. §§ 1 *et seq.*, as a supplemental law. See COSSEC v. González López, 179 D.P.R. 793, 810-811 (2010), citing St. Paul Fire & Marine v. Caguas Fed. Savs., 121 D.P.R. 761, 766 (1998).

---

[5] Act No. 241 also incorporated several sections of Sections 5, 7 and 8 of the Model UCC.

Article 9-102(1)(a) of Puerto Rico's Secured Transactions Act states that its provisions apply to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts", subject to the exceptions provided in Article 9-104 of the same Act. 19 L.P.R.A. §§ 2002(1)(a) and 2004. Article 9-104(j) expressly exempts the applicability of Puerto Rico's Secured Transactions Act "to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder", "except to the extent that the provision is made for fixtures in [19 L.P.R.A.] § 2113"[6]. 19 L.P.R.A. § 2004(j). The exclusion of real estate transactions in Section 9-104(j) of the UCC, as adopted in 19 L.P.R.A. § 2004(j), "is a recognition that, because of the vagaries of real property law, uniformity, though perhaps desirable, is extremely unlikely." 8 William D. Hawkland *et al.*, Uniform Commercial Code Series, § 9-104:11, West Group Pub. (2013). Also see the following cases ruled by the intermediate Court of Appeals of Puerto Rico[7]: BPPR v. Alfaro Umpierre, *et al.*, 2013 PR App. LEXIS 1661 at **26-27, 2013 WL 3356611 at **9-10 (TA 2013); BBVA v. Señorio de Gonzaga, Inc., *et al.,* 2010 PR App. LEXIS 3454 at **8-11 (TA 2010)[8].

In the instant case, the court must first resort to Puerto Rico's Code of Commerce because Article 9-104(j) of Puerto Rico's Secured Transactions Act expressly excludes its applicability to assignment of rents. After reviewing of the Code of Commerce, the court finds that the only reference to rents is found in its Article 244 to the extent that "sales made by owners and by farmers or cattlemen of the fruits or products of their crops or cattle, or of the

---

[6] 19 L.P.R.A. § 2113 governs: (a) priorities of security interests in "fixtures" as defined in 31 L.P.R.A.§ 1403; (b) "fixture filings" of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of 19 L.P.R.A. § 2152(5) in the section of the Registry of Property where a mortgage on the real estate would be recorded in accordance with the provisions of 30 L.P.R.A. §§ 2001 *et seq.*; (c) and "construction mortgages" to the extent that it secures an obligation incurred for the construction of an improvement on land and may include the acquisition cost of the land. None of those provisions are relevant to the instant case. The Debtor has not alleged or proffered the applicability of that exception.

[7] Pursuant to Article 4.005 of Puerto Rico's Judiciary Act, "[t]he judgments and resolutions of the Court of Appeals shall be well grounded, and publishable, and may be cited for purposes of expostulation". 4 L.P.R.A. § 24x. Thus, the cases by Puerto Rico's Court of Appeals are not binding, but illustrative. There is no case law by the Supreme Court of Puerto Rico interpreting the scope of the exclusions provided in 19 L.P.R.A. § 2004.

[8] The court could not find the citation in Westlaw for this case.

-12-

goods in which their rents are paid them" are not considered commercial for purposes of purchases and sales of personal property for the purpose of resale. 10 L.P.R.A. § 1702. Thus, the Code of Commerce does not address the assignment of rents of a commercial building nor whether it constitutes a valid security agreement. Therefore, the court now turns to the Civil Code of Puerto Rico.

Article 1065 of the Civil Code of Puerto Rico provides that "all the rights acquired by virtue of an obligation are transmissible, subject to the law, should there be no stipulation to the contrary." 31 L.P.R.A. § 3029. Article 1065 includes all sorts of rights of credits. Consejo de Titulares v. C.R.U.V., 132 D.P.R. 707, 718 (1993). There are four (4) requirements for the transfer of a credit to be valid: (1) the credit must be transmittable; (2) it must be grounded on a valid title; (3) the credit must be existent; and (4) it must be originating from an efficient obligation. Id. at 718, quoting IBEC v. Banco Comercial, 117 P.R. Off. Trans. 446, 453-454, 117 D.P.R. 371, 377 (1986). None of these requirements are disputed in the instant case.

The Civil Code of Puerto Rico does not expressly define "assignments", but rather provides the effects they have over the contracting parties and third parties. See José R. Vélez Torres, Derecho de Obligaciones, Interamerican University School of Law, 2nd ed., 1997, p. 251. For instance, Article 1416 provides as follows:

> The assignment of a credit, right, or action shall produce no effect against a third person but from the time the date is considered fixed, in accordance with §§ 3273 and 3282 of this title.

> If said assignment involves real property, from the date of its entry in the registry. 31 L.P.R.A. § 3941.

Articles 1172 and 1181 of the Civil Code, 31 L.P.R.A. §§ 3273 and 3282, provide that:

> Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter. They shall also be evidence against the contracting parties and their legal representatives with regard to the declarations the former may have made therein.

> …

-13-

The date of a private instrument shall be considered, with regard to third persons, only from the date on which it may have been filed or entered in a public registry, from the death of any of those who signed it, or from the date on which it may have been delivered to a public official by virtue of his office.

The same provisions shall apply with respect to the principal in regard to contracts made by his agent, in the cases to which the last respective paragraphs of §§ 3453 and 4487 of this title refer, with the exceptions therein made.

In <u>Building Maintenance v. Hato Rey Executive</u>, the Supreme Court of Puerto Rico interpreted Articles 1416, 1172 and 1181 of the Civil Code, *supra*, as follows:

From the foregoing provisions [referring to Articles 1416, 1172 and 1181 of the Civil Code] it may be inferred that the important thing if an assignment of credit is to have effect against a third person is that it has a date certaine. If the assignment is made through a public or private document with the date duly attested to or that could be officially established, the date is certain.

…

The assignment of a credit through a public deed has a date certaine and may be raised against a third person because the public deed is a public document. Articles 1416 and 1172 of the Civil, copied above. Said deed is part of the protocol of the authenticating notary to which no third person has access. The reason why it may be raised against a third person is because it has a date certaine. Likewise, the assignment made through a private document, once it is authenticated in an affidavit before a notary, has a date as certain as that of a public deed, for besides the notarial authentication, it is recorded in the registry of affidavits or declaration of authenticity which a notary should keep by law[9].

The purpose of Article 1416 of the Civil Code, equivalent to Spain's art. 1526, is not to make public the credit assignment so that it may be raised against third parties, but to give certainty to the date of the assignment to avoid frauds and simulations. 9 P.R. Off. Trans. at 889-891, 109 D.P.R. at 666-668 (citations omitted).

Based on the foregoing, an assignment of rents becomes effective against third parties after the date certaine included in the document of assignment, be it a public deed or a private document authorized by a notary public through an affidavit.

---

[9] <u>See</u> Article 59 of Puerto Rico's Notary Act, 4 L.P.R.A. § 2094, which requires notaries to "keep a register of the affidavits in which they intervene in the manner and under the requirements to be established in the Notarial Regulations." <u>Also see</u> Rule 72 of Puerto Rico's Notarial Regulations, 4 L.P.R.A. Ap. XXIV R. 72.

-14-

In the instant case, the *Assignment of Leases and Rents* (Docket No. 181, pp. 3-18) complies with the requirements established in <u>Consejo de Titulares v. C.R.U.V.</u>, 132 D.P.R. at 718, and <u>IBEC v. Banco Comercial</u>, 117 P.R. Off. Trans. at 453-454, 117 D.P.R. at 377, regarding the validity of the transfer of a credit. The *Assignment of Leases and Rents* was acknowledged and subscribed on December 28, 2001 before Notary Public José J. Ledesma, Affidavit No. 1451. Because the document contains a date certaine and was authenticated in an affidavit before a notary public, the *Assignment of Leases and Rents* complies with the Civil Code of Puerto Rico, and is therefore effective against third parties. Consequently, it constitutes a lien on the Debtor's rent proceeds.

*(3)     The Assignment of Rents in the Deed of First Mortgage*

The court now proceeds to analyze if the lien over the rent proceeds was further constituted through the registration of the *Deed of First Mortgage* (Docket No. 40-12) at the Puerto Rico Property Registry.

"[U]nder Puerto Rico law, the registration is a 'constitutive' act for a mortgage, and without the existence of a mortgage, a creditor only has an unsecured personal obligation regarding the underlying debt." <u>Soto-Ríos v. BPPR (In re Soto-Ríos)</u>, 662 F.3d 112, 121 (1st Cir. 2011). <u>Also see</u> <u>Pérez Mujica v. FirstBank, P.R. (In re Pérez Mujica)</u>, 457 B.R. 177, 187-188 (Bankr. D.P.R. 2011) <u>aff'd</u> 2013 U.S. Dist. LEXIS 51698, 2013 WL 1408766 (D.P.R. 2013) ("mortgages [in Puerto Rico] are constitutive in nature, meaning that for the same to be validly constituted, the instrument in which it is created must be duly entered in the Property Registry"); <u>Rosario Pérez v. Registrar</u>, 15 P.R. Offic. Trans. 644, 648, 115 D.P.R. 491, 494 (1984) (for mortgages "recordation is a constitutive act through which the security produces real effects and becomes operative *erga omnes* in the sphere of real rights"); Article 1774 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5042; Article 188 of Puerto Rico's Mortgage Law, 30 L.P.R.A. § 2607.

Article 1760 of the Civil Code of Puerto Rico provides that:

Contracts of pledge and mortgage may secure all kinds of obligations, either pure or subject to conditions precedent or subsequent.  31 L.P.R.A. § 5005.

Article 1418 of the Civil Code states that:

The sale or assignment of a credit includes that of all the accessory rights, such as the security, mortgage, pledge, or privilege.  31 L.P.R.A. § 3943.

To further the purposes of Articles 1418 and 1760 of the Civil Code, *supra*, Article 156 of Puerto Rico's Mortgage Law mandates as follows:

A mortgage may be constituted to secure any kind of obligation and shall not alter the personal liability of the debtor which is established in § 5171 of Title 31[10].  30 L.P.R.A. § 2552.

Article 198 of Puerto Rico's Mortgage Law reads as follows:

**Unless there is a specific agreement or legal provision to the contrary**, a mortgage, whatever the nature and form of the obligation that it secures, shall not include:

(1)     Movable objects that are permanently placed on the mortgaged property, either for its decoration, comfort or development, or for industrial use, unless they cannot be removed without breaking the material or deteriorating the object.

(2)     The crops, in whatever state they may be.

(3)     Rentals which are due and unpaid at the time payment of the secured loan is required.

(4)     The construction of new buildings where there were none before.
30 L.P.R.A. § 2558 (emphasis added).

In the instant case, the Debtor and FirstBank specifically agreed in the *Deed of First Mortgage* that the mortgage extended to "all due and unpaid rents" and that "upon the occurrence and continuance of an event of default … [the] Mortgagee, its successors and assigns, may, at its election … enter upon and take possession of the mortgage property … and may … receive all earnings, income, **rents**, issues and proceeds accruing with respect thereto or

_____

[10] Article 1902 of the Civil Code of Puerto Rico, referenced in Article 156 of the Mortgage Law, *supra*, states that "[a] debtor is liable for the fulfillment of his obligations with all his present and future property."  31 L.P.R.A. § 5171.

-16-

any part thereof" (Docket No. 40-12, pp. 41-42, emphasis added). Thus, the general restriction of Article 198 of Puerto Rico's Mortgage Law, *supra*, becomes inapplicable in the instant case as there is a specific agreement to the contrary. Consequently, pursuant to the interrelated articles of the Civil Code of Puerto Rico and Mortgage Law cited above, the court finds that the registration of the *Deed of First Mortgage* at the Property Registry secured both the mortgage and, accessorily, the rent proceeds.

*(4)      Section 552 of the Bankruptcy Code*

Although rents typically constitute cash collateral under 11 U.S.C. § 363(a), they must be of property subject to a security interest as provided in Section 552. See William L. Norton, Jr. & William L. Norton III, 2 Norton Bankruptcy Law and Practice, 3rd ed., § 44:6 (2013).

Current Section 552 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

(b)(2) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the

court, after notice and a hearing and based on the equities of the case, orders otherwise. 11 U.S.C. § 552.

In simpler terms, the general rule of Section 552 is that property acquired by the bankruptcy estate post-petition is not subject to any lien resulting from a pre-petition security agreement. See Hon. Nancy C. Dreher, Hon. Joan N. Feeny and Michael J. Stepan, Esq., Bankruptcy Law Manual, Volume 1, § 6:52 (2012-2), p. 1297; 11 U.S.C. § 552(a). The purpose of that general rule of invalidating after-acquired property clauses is to facilitate the debtor's fresh start, rehabilitation, and reorganization by allowing the debtor to include as much property as possible in the estate to satisfy the claims of general creditors. Id. at 1299. That general rule, however, does not apply to a secured party's lien on proceeds, products, offspring, rents, profits or hotel revenues … generated from the original collateral … if the contract contains a provision to that effect." Id. at 1297 and 1299, citing 11 U.S.C. § 552(b)(1) and (2). Also see Cadle Co. v. Schlichtmann, 267 F.3d 14, 19-20 (1st Cir. 2001) ("Under 11 U.S.C. § 552(a), '[p]roperty acquired … by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case.' Section 552(b)(1), however, carves out an exception to this rule."); In re Bering Trader, Inc., 944 F.2d 500, 501 (9th Cir. 1991) ("Section 552(a) states the general rule that a pre-petition security interest does not extend to property acquired by the estate after the filing of the petition. Section 552(b) provides an exception for some proceeds, product, offspring, rents or profits of encumbered property."). The purpose of Section 552(b)[11] is to balance the Bankruptcy Code's

---

[11] Prior to the Bankruptcy Reform Act of 1994, Section 552(b) stated that an interest in rents which existed prior to the commencement of the bankruptcy case would extend to post-petition rents to the extent provided by such security agreement and by applicable nonbankruptcy law. This forced courts to apply state law to determine the extent that an interest in rents should continue post-petition. To that extent Section 552 was consistent with the U.S. Supreme Court's decision in Butner v. United States, 440 U.S. 48 (1979). The Bankruptcy Reform Act of 1994, however, amended Section 552(b) to delete the reference to applicable nonbankruptcy law as it relates to rents and fees, charges, accounts, or other payments for the use or occupancy of rooms or other public facilities in hotels, motels, and other lodging properties. Pub. L. 103-394, 214(b) (Oct. 22, 1994). The reference to applicable nonbankruptcy law was not deleted as to revenues derived from personalty. This amendment was intended to have rents and lodging revenues treated as cash collateral notwithstanding the lender's pre-petition failure to seek enforcement of its security interest. See 2 Norton Bankruptcy Law and Practice, op. cit., § 44:6; H.R. Rep. 834, 103rd Cong., 2nd Sess. 27 to 29 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994). Also see Lyons v. Federal Sav. Bank (In re Lyons), 193 B.R. 637, 649 (Bankr. D. Mass. 1996) ("The Bankruptcy Reform Act of 1994 added

interest in freeing debtors of pre-petition obligations against secured creditors' rights to maintain the interests in collateral for which they bargained. See Bankruptcy Law Manual, *op. cit.*, Volume 1, § 6:52, p. 1300; Financial Sec. Assurance v. Days Cal. Riverside Ltd. Pshp. (In re Days Cal. Riverside Ltd. Pshp.), 27 F.3d 374, 375 (9th Cir. 1994), citing In re Bering Trader, Inc., 944 F.2d 500, 502 (9th Cir. 1991) ("Section 552(b) balances the [Bankruptcy] Code's interest in freeing the debtor of pre-petition obligations with a secured creditor's rights to maintain a bargained-for interest in certain items of collateral."); United Virginia Bank v. Slab Fork Coal Co., 784 F.2d 1188, 1191 (4th Cir. 1986) ("It appears clear from the legislative history related to Section 552(b) that Congress undertook in that section to find an appropriate balance between the rights of secured creditors and the rehabilitative purposes of the Bankruptcy Code."); Matter of Village Properties, Ltd., 723 F.2d 441, 444 (5th Cir. 1984) ("[Section 552(b)'s] primary design is to permit creditors to take security interests in proceeds pursuant to applicable state law, such as U.C.C. Article 9 or whatever state law applies to security interests in real property. Section 552 reflects Congress' historical concern that property rights usually should be controlled by state law instead of the 'mere happenstance' of bankruptcy."). "[U]nder Section 552(b), a creditor has a separate security interest in rental income from its interest in the property securing the mortgage." In re South Side House, LLC, 474 B.R. at 414. As a result, a creditor "is entitled to adequate protection of two distinct interests: its mortgage on the property and its right to collect the rents flowing from the property or, at the very least, its security interest in such rents." Id. at 408, quoting Fin. Ctr. Assocs., 140 B.R. at 834.

Under Section 552, three (3) requirements must be met for a pre-petition security interest to apply to post-petition proceeds: "(1) the security agreement must contain an express provision that the security interest extends to after-acquired property of the categories set forth

---

to the Bankruptcy Code Section 552(b)(2), which provides that a mortgagee holding a valid prepetition assignment of rents may treat post-petition rents as cash collateral entitled to adequate protection. The legislative history of Section 552(b)(2) indicates that it was intended to obviate the type of dispute typified by several Massachusetts decisions.")

-19-

in the statute; (2) the after-acquired property must fit within one of the five enumerated categories of the statute; and (3) the security interest must have been perfected prior to the commencement of the bankruptcy case." Bankruptcy Law Manual, *op. cit.*, Volume 1, § 6:52, pp. 1300-1301. Also see 9C Am. Jur. 2d Bankruptcy § 2626 (2013) ("Three prerequisites to applicability of the exception set forth in 11 U.S.C.A. § 552(b)(1) have been identified: (1) there must be a prepetition security agreement; (2) the agreement by its terms must extend to the debtor's prepetition property and to proceeds, product, offspring, or profits of such property; and (3) applicable nonbankruptcy law must permit the security agreement to extend to such after-acquired property."); T-H New Orleans Ltd. Partnership v. Financial Sec. Assurance, 10 F.3d 1099, 1104 (5th Cir. 1993), cert. denied 511 U.S. 1083 (1994) ("A creditor must meet two requirements under Section 552(b) for a security agreement to survive post-bankruptcy: (1) [t]he security agreement must extend to after-acquired property of the designated categories; and (2) the after-acquired property must fit within the five enumerated categories of § 552(b)."); In re Cafeteria Operators, L.P., 299 B.R. 400, 405 (Bankr. N.D. Tex. 2003) ("For a pre-petition security agreement to attach to after-acquired property, a creditor must show the following: (1) the security agreement extends to the after-acquired property upon which the creditor seeks the lien, and (2) the after-acquired property is proceeds, product, offspring, rents, or profits of pre-petition property subject to the lien ... The express terms of the security agreement generally govern the first prong, while state law generally governs the second prong."); Smith v. Dairymen, Inc., 790 F.2d 1107, 1111-1112 (4th Cir. 1986) ("In order to qualify as an exception [under 11 U.S.C. § 552(b)], these conditions must be met: (a) there must be a pre-petition security agreement, (b) the security agreement by its terms must extend to the debtor's pre-petition property and to proceeds, product, offspring, etc. of such property, and (c) applicable non-bankruptcy law, *i.e.*, state law, must permit the security agreement to extend to such after-acquired property.")

In the instant case, the *Assignment of Leases and Rents* and the *Deed of First Mortgage* comply with both nonbankruptcty law and Section 552(b) of the Bankruptcy Code. They each

contain express provisions that the continuing security interest extends to prospective rents (Docket Nos. 181, pp. 4-5, and 40-12, p. 8); such rents fall within the express provision of Section 552(b)(2); and the security interest was perfected prior to the commencement of the bankruptcy case.

*(B)    Rent Proceeds as Cash Collateral*

The Debtor acknowledges that rents generally constitute cash collateral. See the Debtor's *Motion for Reconsideration*, Docket No. 186, p. 6, ¶ 26 ("[r]ents, like cash proceeds from the sale of inventory and the collection of account receivables are denominated 'cash collateral' when included within a creditor's security interest"). The Debtor only contests that before rents become cash collateral subject to adequate protection, the creditor must prove that it has a perfected security interest over the rents. Id.

Although property acquired by the bankruptcy estate post-petition is generally not subject to a pre-petition lien, Section 552(b) creates an exception for liens on post-petition rental income. 11 U.S.C. §§ 552(a) and 552(b). Under Section 363(a), rents that are subject to a pre-petition lien are treated as the secured creditor's cash collateral. 11 U.S.C. §§ 363(a) and 552(b). Also see In re South Side House, LLC, 474 B.R. at 407.

Section 363(c) of the Bankruptcy Code prohibits the debtor to "use, sell, or lease cash collateral" in the ordinary course of business, unless the secured creditor consents or the court authorizes it. 11 U.S.C. § 363(c)(2). Under Section 363(b), a debtor may use cash collateral other than in the ordinary course of business, subject to objection by the secured creditor under Section 363(e). Section 363(e) provides that when a creditor objects to a debtor's use of its cash collateral, the bankruptcy court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

"It is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected." In re South Side House, LLC, 474 B.R. at 408. When considering adequate protection for the use of rents, courts have recognized that Section 552(b) creates a security interest in post-petition rental income that is separate and distinct from the creditor's

-21-

security interest in the property securing the mortgage. See In re Gramercy Twins Assocs., 187 B.R. 112, 121 (Bankr. S.D.N.Y. 1995).

Adequate protection may be provided by cash payments or additional or replacement liens "to the extent" de debtor's use of the property "results in a decrease of value of such entity's interest in such property". 11 U.S.C. § 361(1). A secured creditor "is entitled to adequate protection of two distinct interests: its mortgage on the property and its right to collect the rents flowing from the property or, at the very least, its security interest in such rents." Financial Center Assoc. v. TNE Funding Corp., 140 B.R. 829, 834 (Bankr. E.D.N.Y. 1992).

In the instant case, the Debtor's *Motion for Reconsideration* seeks to set aside the *Order Prohibiting the Use of Cash Collateral* arguing that Island Holdings does not have a perfectly secured lien over the rent proceeds. The court has already addressed this argument and has ruled in favor of Island Holdings. Alternatively, the Debtor only sustains *in arguendo* that it does not need to provide adequate protection "if the rents are being renewed on a monthly basis and are not declining in value" and thus, any interest Island Holdings may have over the rents, if any, is adequately protected (Docket No. 186, p. 7, ¶¶ 24 and 31). Notwithstanding, the Debtor has not moved the court to use the rent proceeds as cash collateral in compliance with Fed. R. Bankr. P. 4001 or LBR 4001-2[12]. Thus, the court is unable to determine at this juncture if Island Holdings is or not adequately protected.

### Conclusion

In view of the foregoing, the court concludes that the *Assignment of Leases and Rents* and the *Deed of First Mortgage* properly perfected a pre-petition lien over the Debtor's rent proceeds, which constitutes cash collateral of Island Holdings pursuant to the Civil Code of Puerto Rico and Puerto Rico's Mortgage Law, as well as Section 552(b) of the Bankruptcy Code. Therefore, the Debtor's *Motion for Reconsideration* is hereby denied. In addition, as of this date, the Debtor has not moved the court for authorization to use Island Holdings' cash

---

[12] The *Order Prohibiting the Use of Cash Collateral* was entered "without prejudice to the debtor moving the court for the use of cash collateral pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 4001 and LBR 4001-2" (Docket No. 182, p. 2).

-22-

collateral. Consequently, pursuant to the *Order Prohibiting the Use of Cash Collateral*, the Debtor is hereby ordered within 14 days to:

(a)    forward all proceeds from the rental contracts to Island Holdings;

(b)    turn over any cash collateral of Island Holdings that is in the possession, custody or control of the Debtor or any of the Insiders of the Debtor (as such term is defined in 11 U.S.C. § 101), whether now existing or hereafter created;

(c)    account for all cash collateral received by or for the benefit of the Debtor since the petition date; and

(d)    permit Island Holdings immediate access to the books and records of the Debtor, including all electronic records on any company computers, to make electronic copies, photocopies or abstracts of the business records of the Debtor.

SO ORDERED.

In San Juan, Puerto Rico, this 9th day of September, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

-23-