IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

NATIONAL PROMOTERS AND
SERVICES, INC.

    Debtor

CASE NO. 12- 01076 (ESL)

CHAPTER 11

## OPINION AND ORDER

This case is before the court upon the *Urgent Motion for Authorization for Use of Cash Collateral and for Approval of Interim Order* (the "*Urgent Motion*", Docket No. 247) filed by the Debtor and the *Opposition* thereto (Docket No. 263) filed by LSREF2 Island Holdings, Ltd. ("Island Holdings"). A cash collateral hearing was held on October 2, 2013 (Docket No. 268) to consider the contested matter. For the reasons stated herein and for the reasons stated at the October 2, 2013 hearing, the Debtor's *Emergency Motion* is granted until the date of the confirmation hearing and Island Holdings' *Opposition* is hereby denied.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Procedural Background

On February 15, 2012, the Debtor filed its voluntary Chapter 11 petition. The Debtor is and has been operating its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

Prior to the petition date, FirstBank Puerto Rico ("FirstBank") made certain loans and extended certain financial accommodations to the Debtor. See Claims Register No. 7-1 and the *Motion Submitting Documents in Support of Claim No. 7* (Docket No. 40). On April 19, 2013, Island Holdings filed a *Transfer of Claim* (Docket No. 136) informing that FirstBank had transferred to it Claim No. 7-1.

To secure the prepetition debt, the Debtor granted to FirstBank liens on and security interests in substantially all of the Debtor's property, and the proceeds, products, rents and profits of all of the foregoing, as more particularly described in the Prepetition Financing Documents (the "Prepetition Collateral").

On September 9, 2013, the court entered an *Opinion and Order* (Docket No. 243) ruling that the Debtor's rent proceeds constituted cash collateral in the instant case.

On September 18, 2013, the Debtor filed an *Urgent Motion* (Docket No. 247) seeking court approval to use Island Holdings' cash collateral in order to make payments on expenses that would benefit the estate[1].

On September 20, 2013, the court issued an *Interim Order Authorizing Debtor-In-Possession to Use Cash Collateral, Granting Replacement Liens and Other Adequate Protection, Setting Final Hearing, and Affording Other Related Relief* (the "*Interim Order*", Docket No. 251) temporarily granting the *Urgent Motion* and setting a hearing on the use of cash collateral for October 2, 2013.

On September 24, 2013, Island Holdings filed an *Urgent Motion to Alter or Set Aside the Interim Order* (Docket No. 254) arguing that the Debtor should not be allowed to pay professional fees with its cash collateral. It further objects to the payment of a broker that has never been approved by the court.

On October 1, 2013, Island Holdings filed an *Opposition to Request For Permanent use of Cash Collateral* (the "*Opposition*", Docket No. 263) sustaining that the Debtor failed to provide them with adequate protection and that the allotted "carve out"[2] to pay professional fees

---

[1] Debtor seeks the approval of $17,663.37 in disbursements. <u>See</u> Docket Not. 247, p 11.

[2] "Although the term is widely used but rarely defined, a 'carve-out agreement' is generally understood to be 'an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, *i.e.*, to carve out of its lien position.'" <u>In re U.S. Flow Corp.</u>, 332 B.R. 792, 796 (W.D. Mich. 2005), citing <u>In re White Glove, Inc.</u>, 1998 Bankr. LEXIS 1303 at *22, 1998 WL 731611 at *6 (Bankr. E.D. Pa. 1998). <u>Also see</u> <u>In re Robotic Vision, Sys.</u>, *infra*, at 273, citing James S. Cole, <u>The "Carve Out" From Liens and Priorities to Guarantee Payment of Professional Fees in Chapter 11</u>, 1993 DETCLR 1499, 1518 (1993) ("The carve out is intended to guarantee that a lien or super-priority will not reach certain funds, usually up to a maximum dollar amount, in order that professional fees can be paid … justification for the carve out has rested upon a general appeal to the needs of the bankruptcy system, not upon the Bankruptcy Code.")

is also improper. Island Holdings avers that there was no negotiation with the Debtor for the use of cash collateral and other discovery issues.

On October 2, 2013, the court held the hearing on cash collateral. See the *Minute Entry*, Docket No. 268.

Applicable Law and Analysis

*(A)      Use of Cash Collateral*

A motion to use cash collateral is governed by 11 U.S.C. § 363. Section 363(c)(2) forbids the trustee (or debtor in possession) from using cash collateral unless each entity with an interest in it consents, or the court, after notice and a hearing, authorizes such use. Section 363(e) expressly authorizes the court to condition the use of cash collateral to provide adequate protection to the interested entity, for adequate protection must be afforded to secured creditors who have an interest in the property under 11 U.S.C. § 361. Although "adequate protection" is not defined in the Bankruptcy Code, the provisions in 11 U.S.C. § 361 constitute an illustrative, non-exclusive list of the remedies that may be fashioned by the court to secure the "indubitable equivalent" of the entity's interest in such property.

The determination of a 11 U.S.C. § 363 motion for the use of cash collateral is not governed by any set of neatly articulated legal standards. On the contrary, given the nature of bankruptcy and the distinct characteristics of every debtor, the decision requires a case-by-case analysis of the facts and circumstances of each case, prior to authorizing or denying the request to use cash collateral. See In re Dynaco Corp, 162 B.R. 389, 394-95 (Bankr. D.N.H. 2002) (granting a cash collateral motion after finding adequate protection in the form of a viable business plan that would create sufficient value in replacement liens to protect creditor's interest); First Bank of Miller v. Wieseler, 45 B.R. 871, 875 (D. South Dakota 1985) (denying cash collateral motion after rejecting adequate protection in future lien over non-existent property and stating that determining the value of creditor's interest is essential prior to deciding the issue of adequate protection).

In considering a debtor's request to use cash collateral, the court must strike a balance between two irreconcilable interests. First, Island Holdings, as secured creditor, must not be left unprotected by the Debtor's unrestricted use of its cash collateral. Second, achieving the paramount goal of debtor rehabilitation will generally require granting debtor access to the cash collateral covered by the secured creditor's claim. See In re Dynaco, 162 B.R. at 393; In re Wieseler, 45 B.R. at 876. Thus, in order to determine the balance between these two interests, as ruled in at the October 2, 2013 hearing, the court considers the following three factors: (1) if there is cash collateral is involved[3]; (2) whether the use of the cash collateral is necessary for the Debtor's operations; and (3) what is the adequate protection afforded to Island Holdings, if any[4]. See In re Dynaco Corp., 162 B.R. at 393-94.

As ruled at the October 2, 2013 hearing (Docket No. 268), the first factor has already been established through the *Opinion and Order* entered on September 9, 2013 (Docket No. 243), where the court ruled that Debtor's rent proceeds constituted cash collateral in the instant case. The court does not need to revisit this factor and further incorporates the *Opinion and Order* herein, which to this day is final and firm.

Next the court now considers the second and third factors: whether the use of the cash collateral is necessary for the Debtor's operations and whether Island Holdings is adequately protected.

The Debtor affirms that most of the expenses to be paid with the cash collateral are necessary for the maintenance and utilities of the business and its real property from which it derives rents. Island Holdings did not present any evidence to contest the necessity of these expenses. After considering the evidence and the testimonies presented at the October 2, 2013, the court finds that the expenses proposed by the Debtor are necessary for its operations and to attempt its reorganization.

---

[3] See 11 U.S.C. § 363(p)(2): the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

[4] See 11 U.S.C. § 363(p)(1): the trustee (or debtor-in-possession) has the burden of proof on the issue of adequate protection.

-4-

In regards to Island Holdings' objection to use its cash collateral to pay professional fees, in <u>Costa v. Robotic Vision Systems, Inc. (In re Robotic Vision Systems, Inc.)</u>, 367 B.R. 232, 237 (B.A.P. 1st Cir. 2007), the Bankruptcy Appellate Panel for the First Circuit recognized that "the reorganizational effort requires services of bankruptcy professionals" and thus "bankruptcy courts [may] authorize over objection, the use of cash collateral to fund such professional services". <u>Also see</u> <u>In re Proalert, LLC</u>, 314 B.R. 436, 443-445 (B.A.P. 9th Cir. 2004) (holding that cash collateral can be used to pay professional fees if creditor is adequately protected); <u>In re Residential Capital, LLC</u>, 2013 Bankr. LEXIS 3933 at *49, 2013 WL 5290313 at *14 (Bankr. S.D.N.Y. 2013); <u>In re Coventry Commons Assoc.</u>, 149 B.R. 109, 114 (Bankr. E.D. Mich. 1992) ("[U]se of [creditor's] cash collateral to pay the debtor's professional fees does not constitute a surcharge. The debtor is not asking [creditor] to pay for the debtor's professional fees. If [creditor's] interest is adequately protected, then by definition there will be no impairment of [creditor's] interest in the nature of a surcharge, or of any other nature."). Thus, the court is not moved by Island Holdings' objection in that regards.

As to Island Holdings' adequate protection, in <u>In re Mullen</u>, 172 B.R. 473, 477 (Bankr. D. Mass. 1994), the court reasoned as follows:

> [a] lender's security interest in receivables or inventory and their proceeds provides an analogy to the security interest in rents. A receivable or inventory lender does not lack adequate protection, even if it is undersecured, so long as the value of the stream of future accounts or inventory and their proceeds is not declining... So long as the debtor is not operating at a loss, or rents are not declining, the renewals provide constant value.

Island Holdings argued at the October 2, 2013 hearing that <u>In re Mullen</u> is no longer "good law" as it was criticized in <u>Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship</u>, 248 B.R. 668, 685-686 (D. Mass. 2000). In <u>Beal Bank, S.S.B.</u>, the court only criticized the use of the "subtraction" method set in <u>Mullen</u> to determine the value of the real estate, not the notion that an increase in rents provides adequate protection. 248 B.R. at 685. In fact, <u>Beal Bank, S.S.B.</u> does not mention or address the issue of adequate protection. Island Holdings further relied on <u>Travelers Ins. Co. v. River Oaks Ltd. Partnership (In re River Oaks Ltd. Partnership)</u>, 166 B.R.

94 (E.D. Mich. 1994), to support its position that (1) that cash collateral should not be used to pay professional fees; and (2) that In re Mullen is not "good law". The issue of payment of professional fees has already addressed. Moreover, In re River Oaks Ltd. Partnership does not seem to dispute the adequate protection doctrine arising from increasing rents as explained in In re Mullen, *supra.*

Thus, the court finds Island Holdings is adequately protected with the increase in the Debtor's post-petition rents, especially because no diminution of value has been alleged or demonstrated. Rather, the Debtor's rental income has basically tripled since the filing of the petition. See Docket No. 268, p. 5 (Mr. Betancourt testified that the Debtor's rent income has increased significantly since the filing of the bankruptcy petition from about $6,000 pre-petition to $18,000 post-petition).

Conclusion

In view of the foregoing, and in accordance with the rulings made at the October 2, 2013 hearing, the Debtor's *Urgent Motion* (Docket No. 247) is hereby granted and Island Holdings' *Opposition* (Docket No. 263) is hereby denied. Thus, the Debtor is authorized to use Island Holdings' cash collateral as proposed in Debtor's admitted Exhibit 3 until the confirmation hearing scheduled for October 21, 2013.

SO ORDERED.

In San Juan, Puerto Rico, this 9th day of October, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

-6-